## CHURCH vs. SMITH, imp.

LAND CONTRACT.   *Rights of vendor: Rights of his assignee of a part or the whole of the purchase-money notes, after a strict foreclosure of the purchaser's equity.*

1. The vendor of land by an ordinary land contract holds the legal title as security for the unpaid purchase money; and on default in its payment is entitled, in this state, to a *strict foreclosure* of the purchaser's equity of redemption.
2. If the vendor transfers to another person the purchaser's notes for the whole of the unpaid purchase money, he will hold the legal title in trust for the security of his assignee; and on failure of the purchaser to pay such notes at maturity, the assignee will be entitled not only to a strict foreclosure of the purchaser's equity of redemption, but to a judgment against the vendor enforcing the execution of such trust in some appropriate manner.
3. Whether a mere *vendor's lien* will pass to and be enforceable by an assignee of the purchase-money debt, is not here considered.

4. Where the vendor transfers only *a part* of the purchase-money notes, he will hold the legal title as trustee for his assignee *pro tanto;* and, after a strict foreclosure in his own behalf upon default in payment of the notes by him retained, he will hold the absolute title to an undivided portion of the land as trustee for his assignee, the amount of the assignee's interest in the land being proportioned to his interest in the unpaid purchase money.

5. In an action by the holder of a part of the purchase-money notes in such a case, it is error to adjudge the plaintiff's rights in the land *paramount* to those of the vendor, or to direct a sale of the land and a personal judgment against the vendor for a deficiency: but he should be adjudged to convey to the plaintiff the proper undivided part of the land, or, if he cannot do that, to make compensation therefor on equitable terms; and this relief should be granted where the necessary facts are alleged in the complaint, though the specific relief there demanded is a foreclosure and sale.

APPEAL from the Circuit Court for *Winnebago* County.

The appellant, *Smith*, and one David Kimball, being the owners of a certain tract of land in the county of Winnebago, entered into a contract in writing, in the usual form, with the defendant Bogk, to sell and convey such land to the latter for $4,000. Bogk paid $300 in cash, and gave his notes to the vendors, payable to Kimball or bearer, for different amounts and payable at different times, for the residue of the purchase money. Of these notes, the one which first became due (being for fifty dollars and interest) was transferred by the vendors, *Smith* and Kimball, to the plaintiff, immediately after execution. *Smith* and Kimball retained the residue of such notes; and Bogk having failed to pay some of them at maturity, they brought an action against him, in equity, and obtained judgment for a strict foreclosure of his equitable interest in the land, under the contract. The present plaintiff was not a party to that action, and his note has not been paid.

This action was brought upon the theory that the plaintiff has a mortgage interest in the land affected by such contract, as security for his note; and the plaintiff seeks to enforce payment of his note by a sale of the land as upon a foreclo-

sure of an ordinary mortgage. The circuit court adopted the plaintiff's theory of the case, and, after adjudging that the plaintiff's lien upon the land is paramount to that of the vendors, gave judgment of foreclosure, and for a sale of the land, and the payment of the plaintiff's note out of the proceeds of such sale. A personal judgment against *Smith* and the representatives of the estate of Kimball, was also rendered for the amount of such note. From that judgment *Smith* appealed.

*Gabe Bouck*, for appellant:

1. Upon no theory were the vendors liable upon the note, and the personal judgment against them was therefore erroneous. 2. There is a distinction between a mortgage and a land contract, which the court has failed to observe. *City v. Lamson*, 9 Wall., 484; *Button v. Schroyer*, 5 Wis., 598; *Baker v. Beach*, 15 id., 99; *N. W. Iron Co. v. Meade*, 21 id., 477; *Druse v. Wheeler*, 22 Mich., 439. 3. A vendor's lien is an equitable, not a legal right, and is not assignable. Story's Eq. Jur., § 1219; 4 Kent's Com., 150; *Porter v. Dubuque*, 20 Iowa, 440; *Mackreth v. Symmons*, 1 L. C. in Eq., Am. note; 11 Gratt., 615, 629; *Brush v. Kinsley*, 14 Ohio, 20; *Horton v. Horner*, id., 437; *Tiernan v. Beam*, 2 id., 386; *Jackman v. Hallock*, 1 id., 318; *Baum v. Grigsby*, 21 Cal., 172; *Lewis v. Covillaud*, id., 178; *Williams v. Young*, id., 227; *Ross v. Heinzen*, 36 id., 313; *Keith v. Horner*, 32 Ill., 524; *Richards v. Leaning*, 27 id., 431; 32 id., 526; *Fish v. Howland*, 1 Paige, 20; *White v. Williams*, id., 502; *Dixon v. Dixon*, 1 Md. Ch. Dec., 220; *Hall's Ex'rs v. Click*, 5 Ala., 363; *White v. Stover*, 10 id., 441; *Shall v. Biscoe*, 18 Ark., 142; *Welborn v. Williams*, 9 Ga., 86; *Dickinson v. Chase*, 1 Morris, 492; *Briggs v. Hill*, 6 How. (Miss.), 362; *Walker v. Williams*, 30 Miss., 165; *Pitts v. Parker*, 44 id., 247; *Stratton v. Gold*, 40 id., 778; *Green v. Demoss*, 10 Humph., 371; *Gann v. Chester*, 5 Yerg., 205; *Adams v. Cowherd*, 30 Mo., 458. 4. The vendor could not sell the land

on foreclosure, and an assignee of one of the notes can have no greater rights.

*H. B. Jackson*, for respondent:

The relation between the parties to a land contract is analogous to that of mortgagor and mortgagee, and, as in case of a mortgage, so here, where several parties hold the several notes, each note holder is a mortgagee, and the holder of the note first falling due has the prior lien. *Wood v. Trask*, 7 Wis., 566; *Marine Bank v. International Bank*, 9 id., 57; *Lyman v. Smith*, 21 id., 674; 14 Ark., 628; 4 S. & M., 294; Meigs (Tenn.), 52; 33 Wis., 658, 666; 2 Story's Eq. Jur., § 1212; 1 id., § 790; 1 N. Y., 595. The contract was executed by both parties, and the note was payable to bearer; hence appellant, by executing the contract, by transferring the note to the plaintiff, and by divesting the vendee of title, came to hold the land subject to the payment of plaintiff's first lien, and a personal judgment against him was proper. *Bishop v. Douglas*, 25 Wis., 696. The judgment contains no provision for enforcing payment except by the sale of the land. 15 Wis., 503. A sale was necessary because the title was not in plaintiff, and his lien could not otherwise be enforced. *Button v. Schroyer*, 5 Wis., 598, therefore, does not apply.

LYON, J. Like the case of *Button v. Schroyer*, 5 Wis., 598, the transaction between *Smith* and Kimball, of the one part, and Bogk, of the other part, "is an ordinary case of a contract for the sale and conveyance of real estate, part of the purchase money having been paid, * * * and the title withheld as security for the remainder of the purchase money. * * * The relation between the parties is analogous to that of equitable mortgagor and mortgagee. The former has the equity of redemption; the latter has the correlative right of foreclosure."

Bogk having failed to make the payments of purchase money stipulated for in the contract, *Smith* and Kimball

availed themselves of such right of foreclosure, and thereby cut off and terminated the equitable interest of Bogk in the land. In accordance with the practice adopted in *Button v. Schroyer*, and followed in *Baker v. Beach*, 15 Wis., 99, this result was accomplished by a strict foreclosure of Bogk's equity of redemption, and not, as seems to be the practice in some of the states, by a sale of the land.

*Smith* and Kimball held the legal title to the land as security for the payment of all the notes given by Bogk for the unpaid purchase money. This security was essentially a mortgage interest in the land. Had they transferred all of those notes to plaintiff, instead of but one of them, we are clear that they would thereafter have held the legal title to the land in trust for the security of the plaintiff, and that after Bogk had made default by failing to pay his notes at maturity, the plaintiff would have been entitled, not only to a strict foreclosure of Bogk's equity of redemption, but to a judgment against Kimball and *Smith* enforcing the execution of such trust in some appropriate manner. These principles have been asserted and applied in several well considered cases, and we think the decisions rest upon solid grounds. We cite a few of the cases: *Roper v. McCook*, 7 Ala. (N. S.), 318; *Smith v. Robinson*, 13 Ark. (8 Eng.), 533; *Graham v. McCampbell*, Meigs (Tenn.), 52; *Moore v. Anders*, 14 Ark., 628; *Tanner v. Hicks*, 4 Smedes & Mar., 294.

The learned counsel for the appellant maintains that the security held by Kimball and *Smith* is in the nature of a vendor's lien (which he says is not assignable), and hence, that the transfer of the notes of Bogk for the unpaid purchase money cannot operate as an assignment of such security. It must be conceded that there are cases which seem to support the counsel's position. And yet, we think it apparent that there is a fundamental distinction between the lien of a vendor or grantor of land for unpaid purchase money, and the security held by *Smith* and Kimball in the present case. In

the former case, the interest of the grantor in the land is a mere lien, resting, or which may rest, in parol, the fee being in the grantee, who may readily convey the same, discharged of the lien, to a *bona fide* purchaser for value; while in the present case the fee remained in *Smith* and Kimball, and Bogk took only a mere equity of redemption in the land, no conveyance of which to a stranger could possibly affect the security for the purchase money. In other words, it is the difference between a mere lien without legal title, and ownership of the land subject only to an equity of redemption. This distinction is clearly drawn in some of the cases above cited, and its existence is an answer to the position that Kimball and *Smith* held only a vendor's lien for the unpaid purchase money. Hence it is not necessary to determine, and we do not determine, whether a mere vendor's lien will pass to and be enforceable by an assignee of the purchase-money debt.

If Kimball and *Smith* would have held the land as trustees for the plaintiff had they transferred to him all of the purchase-money notes, no good reason is perceived why they do not now hold it as such trustees to the extent of his interest in such notes. The transfer of one of several notes secured by a mortgage carries with it to the transferee an interest *pro tanto* in the mortaged premises; and inasmuch as the security held by Kimball and *Smith* was tantamount to a mortgage for the unpaid purchase money, it necessarily follows that when they transferred to the plaintiff a note given for a part of such purchase money, they became his trustees for a corresponding interest in the land, the legal title to which they held as security for the whole debt. Before Bogk's equity of redemption was foreclosed, such interest was confined to the legal title; but thereafter the interest so held by Kimball and *Smith* as trustees for the plaintiff was and is the absolute title to an undivided portion of the land. The note of plaintiff being for $50, and the whole unpaid purchase money being $3,700, the

plaintiff's share of the land is an undivided one seventy-fourth thereof. It is scarcely necessary to say that the rights of the plaintiff are not affected by the foreclosure proceedings to which he was not a party. Yet these proceedings may enure somewhat to his benefit, in that they terminated Bogk's equitable interest in the land in question, and left Kimball, *Smith* and the plaintiff the absolute owners of such land, in common, in the proportions above indicated.

It follows from the views above expressed, that the plaintiff and Kimball and *Smith* are on the same footing in respect to the land. Hence that portion of the judgment which declares that plaintiff's rights therein are paramount to those of Kimball and *Smith*, is erroneous.

The judgment is also erroneous in that it directs the land to be sold. True, we hold that the security with which we are dealing is essentially a mortgage interest, and the statute (R. S., ch. 145, sec. 1) provides that in actions for the foreclosure or satisfaction of mortgages, if the plaintiff recover, the court shall order a sale of the mortgaged premises, or of so much thereof as may be necessary to satisfy the mortgage debt and interest; yet we do not think this security is within the statute. It is quite manifest that the statute has reference to ordinary mortgages, which leave the fee of the mortgaged premises in the mortgagors, only to be divested by the foreclosure sales (*Wood v. Trask*, 7 Wis., 566), and not to a security like that in the present case, which, although analogous to a mortgage, vests or leaves the fee in the mortgagee. In the former case a sale may be deemed necessary to divest the mortgagor of the fee, while in the latter case the mortgagor has produced the same result by his own act or contract, and, having nothing but an equitable interest in the land, he may be divested thereof by a decree or judgment of the court, and a sale is unnecessary. In *Baker v. Beach, supra*, the default occurred after the above statute was enacted, and the case was governed by the statute. Although we find there

no discussion of the subject, the decision is in harmony with the foregoing views.

Besides, this is not properly a foreclosure action. That was the nature of the action of Kimball and *Smith* against Bogk, the judgment in which terminated the equity of redemption of the latter. The real office of this action is to determine the plaintiff's interest in the land, and to secure it to him. It is true the action was not brought on that theory, but the necessary facts are alleged to entitle the plaintiff to that relief, and there seems to be no good reason why he should not obtain it in this action. To that end, a sale of the land is entirely unnecessary.

All that can be required of the appellant and the representatives of Kimball, is, that they execute their trust by conveying to the plaintiff an undivided one seventy-fourth part of the land, or, if it is not in their power to do so, that they make compensation therefor on equitable principles.

It is freely conceded by counsel for the plaintiff that it was error to render a personal judgment in the action. That it was error to render such a judgment, admits of no doubt.

*By the Court.* — The judgment is reversed, and the cause remanded for further proceedings according to law.